# IN THE COURT OF APPEALS OF IOWA

No. 20-0318
Filed September 23, 2020

**IN THE INTEREST OF E.S.,**
**Minor Child,**

**T.S., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

A mother appeals the termination of her parental rights to a child. **AFFIRMED.**

Patrick C. Brau of Brau Law Office, Mt. Pleasant, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Heidi Van Winkle of Van Winkle Law Office, Burlington, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to E.S., born in 2010.[1] She contends the State failed to prove the grounds for termination cited by the juvenile court. We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of human services in June 2018, due to concerns about violence in the home between the mother and another adult as well as between the mother's older sons. Shortly thereafter, the mother was arrested after she attempted to set fire to the family's home. E.S. was removed from her care, adjudicated in need of assistance, and eventually placed in foster care. The child's two older brothers, R.S.-C. and G.S., who are not part of this termination action, were placed in detention and shelter care.

The mother remained in jail until September on three charges of child endangerment, of which she was found guilty. The department recommended the mother address mental-health, substance-abuse, and domestic-violence concerns. The department also noted the mother "appears emotionally and psychologically unstable" and "the children's education, mental-health, and behavioral concerns have not been appropriately addressed by [the mother] throughout their childhood." E.S. was "struggling" in school and "significantly behind academically," but he had "adjusted well to the family foster home." The dispositional order entered in October continued the child's removal from the mother's care.

---

[1] The child's father is deceased.

The mother completed a substance-abuse evaluation in December, which did not recommend treatment. She also completed a mental-health evaluation. The evaluator noted the mother's reports of prior inpatient hospitalizations and regular communication with "[t]he devil, [who] is kind of God's alter ego." The evaluator noted, however, that it appeared the mother "has been able to function at an independent level throughout most of her adult life." The evaluator listed several diagnoses, including schizoaffective disorder, unspecified anxiety disorder, and narcissistic personality disorder with paranoid and schizoid features but opined it was "unlikely" the mother would be compliant with "any type of psychotropic medication." The evaluator's opinion was consistent with the mother's statements to the department that medication was a "sign of weakness."

The department recommended the mother participate in mental-health treatment, including therapy and counseling. In April 2019, the court ordered the mother to "address her mental health issues, at the very least in counseling and therapy, before reunification of any child into her care will be considered." In May, the court granted the mother a six-month extension to "focus on stabilizing her mental health issues and parenting skills to ensure she can appropriately parent and supervise the children and provide for all of their needs."

Despite the court's order, the mother "stopped all mental health counseling and therapy in late June of 2019 and [did not] utilize[ ] any of the parenting skills, healthy boundaries, age-appropriate discipline and expectations of the children, and appropriate supervision of the children as provided to her." The child's older brothers had been returned to the mother's care, but those placements were short-lived. The mother "refused to enroll [G.S.] in school, was not in agreement with

continued medication management for the child," and "[w]ithin one week of being returned home, [G.S. had] been suspended from school due to assaultive behaviors, and additional delinquency charges [we]re pending." The mother also "refused to provide for medical care and medication management for [R.S.-C.]" and the child had "been using marijuana." The mother believed the children "should make their own decisions, and they [would] eventually learn from their own mistakes" and that "enforcing rules, structure, and boundaries, or offering guidance to her children [was] not necessary." The court found:

> Obviously, the children's mother has not been providing any supervision or parenting to either young man while in her custody. Both [R.S.-C. and G.S.] are essentially left to fend for themselves while in the community. [E.S.] is 9 years of age, and is in need of supervision, structure, and parenting that his mother has not provided to his two older siblings while in her care.

The court found E.S. could not be returned to the mother's care "due to her extensive mental health issues and lack of parenting skills which result in the child not receiving adequate care" and directed the State to institute proceedings to terminate the mother's parental rights to E.S.

The termination hearing took place in January 2020. The record before the juvenile court indicated E.S. had been removed from the mother's care since July 2018, the department had recently decreased the mother's visits because the child reported "he wasn't being fed [and] that all they do is watch TV," the mother refused mental-health treatment or parenting education, and the child expressed he did not want to live with the mother because "he doesn't feel safe, and . . . he doesn't feel loved." The department caseworker and guardian ad litem recommended termination of the mother's parental rights.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2019). The mother appeals.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    *Discussion*

The mother challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f), which requires proof of several elements conceded by the mother and proof the child could not be returned to her custody. The mother contends the evidence did not establish the child could not be returned to her care at the present time.

At the time of the termination hearing, the child had been out of the mother's care for approximately eighteen months. The mother testified she "ha[d] no clue" what mental-health treatment she had attended, and that she had not done any treatment since "[p]robably about July last year." The department caseworker opined that the mother "does not have any insight into her mental health, how that's impacted her children, the ways of her parenting." The caseworker testified, "I believe that [E.S.]'s needs now and future needs will be dismissed by her and that she'll sabotage any growth—any of his potentiality." The mother described her

parenting style as "flexible," stated she "choose[s] [her] battles" with her children, and believed "some level of physical violence is normal" "[c]oming from where they come from." When asked about her visits with E.S., the mother responded, "They go." Despite the mother's acknowledgment that E.S. struggled academically with "[p]robably everything," she did not know what grade the child was in, she could not "remember" his teacher's name, and she had not attended his parent-teacher conference or Individualized Education Program (IEP) meeting. The mother's testimony substantiates the caseworker's characterization of the mother's "lackadaisical" attitude with regarding to "taking care of [E.S.]'s needs going forward."

The juvenile court stated:

The child's mother has obtained safe and stable housing and has also maintained employment since her release from incarceration. Unfortunately, throughout the Department's involvement with the family, additional concerns have arose regarding the mother's mental health issues, lack of any supervision of the children, and lack of any affirmative parenting skills.

Since the final permanency hearing held in November, 2019, the mother has refused to address her mental health issues, has attended only one parenting skill session with [family safety, risk, and permanency services], and has not attended Parent-Teacher conferences or IEP meetings for [E.S.]. The mother's testimony essentially mirrors her testimony given at the final permanency planning hearing held on November 20, 2019. She has refused to participate in any services to assist her in appropriate supervision of her child and affirmative parenting, including addressing his daily physical, educational, emotional, and mental health needs. The mother's lack of insight into her parenting and addressing the needs of her children are demonstrated by her statement that "medications are for weak-minded individuals." When asked what [E.S.] struggles with, her response was "probably everything," although she has done nothing to assist him with his issues.
. . . .
The bond between the child and the child's parent is described as estranged. This is demonstrated by the child's desire to not be returned to his mother's custody, the child's statements that he does

not trust his mother and feels he cannot communicate with her, and the lack of significant and meaningful contact between the child and his mother during visitations. This is also evidenced by the mother's statement: "If he comes, he comes; if he don't, he don't."

. . . .

. . . The child's safety can best be ensured by termination of parental rights and adoption. The best placement for furthering the long-term nurturing and growth of the child is with his current foster parents pending a pre-adoptive placement being located, because the child's mother has provided for no long-term nurturing and growth for [E.S.] and has refused to participate in any services related to his long-term nurturing and growth. Furthermore, it is apparent the child's mother does not believe it is her responsibility to provide for any long-term nurturing and growth of [E.S.] as evidenced by her testimony in both the instant matter and also the final permanency planning hearing held November 20, 2019. The physical, mental and emotional condition and needs of the child can best be met by termination of parental rights and adoption because the child's mother has refused to provide for any physical, mental and emotional needs of [E.S.] and has refused to participate in any services [to] provide for such needs.

We concur in the court's finding that the child could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) was satisfied. We further conclude termination is in the child's best interests and no permissive statutory exception should be applied to preclude termination. *See* Iowa Code § 232.116(2), (3). We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**